190 So.2d 607 (1966)
Orlando BRADY, Appellant,
v.
The STATE of Florida, Appellee.
No. 66-93.
District Court of Appeal of Florida. Third District.
October 11, 1966.
Rehearing Denied October 26, 1966.
*608 Earle V. Rifas, Richard A. Pellar, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Arden M. Siegendorf, Asst. Atty. Gen., for appellee.
Before PEARSON, CARROLL and SWANN, JJ.
PEARSON, Judge.
Orlando Brady stabbed his wife to death before a crowd of witnesses in a Greyhound Bus Station in Homestead, Florida. He was bound over to the Grand Jury which returned an indictment against him for first degree murder. He entered pleas of not guilty and not guilty by reason of insanity. The jury found him guilty of second degree murder, and after adjudication, he was sentenced to twenty years in the State penitentiary.
On his appeal to this court, the appellant has presented three points: (1) the trial court erred in denying appellant's motion for a mistrial when the prosecutor sought to ascertain whether appellant had been counseled by a psychiatrist prior to being examined by the court-appointed psychiatrist; (2) the trial court erred in failing to charge the jury that the circumstantial evidence rule applied to the issue of defendant's sanity or insanity; (3) the trial court erred in denying appellant's motion for a directed verdict on the issue of insanity. We find that none of these points present reversible error upon the record in this case. Nevertheless, because of the seriousness of the offense and the punishment involved, we will briefly discuss the basis for our decision on each point.
Appellant's first point claims that the trial judge should have declared a mistrial. The appellant did not claim that he was insane, in the ordinary usage of the word, at the time of the commission of the offense. Instead, he claimed that he was subject to epileptic seizures and that the crime may have been committed in a furor after one of these seizures. It was thereupon urged that he was unaware of the nature of his act or that it was wrong.
The State moved for an order appointing psychiatric experts to examine the defendant. The defendant, through his counsel, objected to the appointment of psychiatrists, contending that an epileptic seizure is a neurological disfunction and that its presence may be determined by a neurological, rather than a psychiatric, examination. The trial court overruled the objection and appointed two psychiatrists to examine the defendant. Prior to the examination of the defendant by Dr. James L. Anderson, one of the court-appointed psychiatrists, the defendant was examined, at the request of his attorney, by Dr. Donald Pellar, a neurologist who is the brother of defendant's counsel-of-record. At the trial, Dr. Anderson testified as the court's witness and was therefore subject to cross examination by both the State and the defendant. The substance of Dr. Anderson's testimony was that, if the history given him by the defendant was entirely correct, there was some possibility that the appellant could have suffered from epilepsy.
The State, upon beginning its cross examination of Dr. Anderson, asked the question: "Q. Doctor, do you know whether or not you saw the Defendant before or after he was counselled by Dr. Pellar, Mr. Pellar's brother?" Defense counsel immediately moved for a mistrial. The trial judge heard arguments on the motion and determined that the defendant had not been so prejudiced by the improper question that a fair trial could not be had upon proper instruction to the jury. The jury was recalled, and without repeating the question, the trial judge instructed the jury that the question was improper and should be disregarded.
The appellant urges that it was error not to declare a mistrial because the conduct of the State Attorney suggested fabrication of defendant's sole defense (insanity). It is urged that the question necessarily implies *609 perjury on the part of the defendant and subordination of perjury on the part of defendant's counsel.
The question was improper, but the effect was not such as to require a mistrial. The trial judge's instruction and admonition to the jury was sufficient. See Morris v. State, 100 Fla. 850, 130 So. 582 (1930); Perry v. State, 146 Fla. 187, 200 So. 525 (1941).
Appellant's second point urges that the trial court erred in failing to charge the jury that the rule on circumstantial evidence which applied to the issue of guilt or innocence (where the State's evidence is circumstantial, it must not only be consistent with guilt but also inconsistent with innocence) also applied in determining sanity or insanity.
We first note that the charge, which appellant now says should have been given, was not submitted to the trial court in writing as required by § 918.10(3), Fla. Stat., F.S.A. At a charge conference, the appellant's attorney did state that a charge that insanity may be proved by circumstantial evidence should be included. Without determining whether the charge would have been proper if the evidence to support it had been presented, we hold that the charge was not called for by the evidence in this record. The claim of insanity was not based upon circumstantial evidence; it was based upon the direct evidence of the defendant and upon the statements of the defendant to the doctor. The doctor testified that the best evidence of whether the defendant had any type of seizure in the bus station prior to the killing was the evidence of those who observed him. The witnesses who observed defendant gave no evidence which would suggest an epileptic seizure. We therefore hold that the court did not err in refusing the informal request for an instruction which was not required by the evidence. See Thomas v. State, 69 Fla. 692, 68 So. 944 (1915); Flint v. State, Fla.App. 1960, 117 So.2d 552.
Appellant's third point urges error in the court's refusal to direct a verdict upon the issue of insanity. Appellant argues that the defendant presented sufficient evidence to show that the defendant could have had an epileptic seizure and that since the State did not prove that he could not have had an epileptic seizure, he was entitled to a directed verdict.
Where there is testimony sufficient to present a reasonable doubt as to sanity, the presumption of sanity vanishes and the defendant is then entitled to an acquittal if the State does not overcome that reasonable doubt. Thomson v. State, 78 Fla. 400, 83 So. 291 (1919); Farrell v. State, Fla. 1958, 101 So.2d 130.
Plaintiff's point must fail because the evidence presented by the defendant was not sufficient to eliminate the presumption of his sanity. Nothing was ever presented in this record which could be characterized as more than a suggestion that the defendant suffered an epileptic seizure. No history of epilepsy before or after the event was offered.
The jury's conclusion of sanity is supported by the evidence. One witness for the State testified to the effect that the appellant's actions were normal during one half-hour immediately preceding the homicide. The testimony of another witness indicated that the appellant was intoxicated. Contrary to the contentions of the appellant, the court-appointed psychiatrist did not express an opinion that the appellant was insane at the time of the act complained of. Instead, he repeatedly testified that eye-witness' testimony of the appellant's actions at the time of the slaying was necessary for the condition to be suggested. See Crews v. State, 143 Fla. 263, 196 So. 590 (1940); Byrd v. State, Fla.App. 1965, 178 So.2d 886; Norman v. State, Fla. App. 1963, 156 So.2d 186.
Affirmed.