557 So.2d 27 (1990)
George MORRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 70234.
Supreme Court of Florida.
February 22, 1990.
*28 Fred Haddad, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Morris appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and vacate the sentence.
On May 28, 1986, appellant Morris sought, and was given, permission from his girlfriend to take her eighteen-month-old son, Matthew Roberts, home with him for the night. Later that evening, the child, showing no signs of life, was brought into the emergency room of a hospital by paramedics. Attempts to resuscitate him failed and he was pronounced dead. Detective Beimly visited Morris at his home that night and Morris told him that he had left the baby lying on the bed and that when he returned five minutes later the child was lying on the floor not breathing, apparently having hit his head on the nightstand during a fall. Morris accompanied Beimly to the police station where he repeated the same story. He later gave different versions on tape, saying first that when he and Matthew were crossing a patio "he just slipped some kind of way and then fell back on his head," and then saying that the door hit him causing him to fall back on the patio. He finally claimed that he had lied earlier about the patio and bed, and that what had really happened was that he was throwing Matthew up in the air and catching him when Matthew slipped and hit his head on a table. Morris was indicted for premeditated first-degree murder. His motion to suppress the tapes was denied and edited versions were played to the jury. At trial, the medical examiner opined that Matthew died of multiple injuries due to blunt trauma. Morris changed his story again and testified at trial that he took the child with him while he tried to sell twenty-five ounces of cocaine; the deal went sour and the buyers beat Matthew. The jury was instructed on premeditated murder, felony murder by trafficking, and felony murder by aggravated child abuse. Morris was found guilty by general verdict. The jury recommended life. The judge sentenced him to death, finding no mitigating circumstances and a single aggravating circumstance  the murder had been committed in a particularly heinous, atrocious, and cruel manner.
Morris argues on appeal that the statement he initially made in his home to Beimly should have been suppressed because he had not been given Miranda warnings at that time. We disagree. No custodial interrogation took place in Morris's home and thus Miranda warnings were not required.
The edited versions of the tapes that were played for the jury contained material that Morris now claims should have been deleted. In Correll v. State, 523 So.2d 562, 566 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988), we ruled that:

*29 Ordinarily, a defendant's statement should be introduced into evidence in its entirety, absent totally extraneous matters.
Although some of the material on the tapes appears to be extraneous and should have been deleted, we hold the error harmless since it is clear to us that there is no reasonable possibility that the jury would have returned a different verdict had the material been excluded.
Morris' claim that his lawyer should not have let him take the stand is without merit. Morris exercised his constitutional right to testify, and did so against the advice of counsel. His claim that the verdict was insufficiently supported by the evidence is similarly lacking in merit, as is his assertion that the indictment was insufficient.
Morris claims that the jury should not have been instructed on felony murder by trafficking when the only evidence of this was the defendant's own in-court statement. We agree. The prosecution is required to introduce evidence sufficient to establish prima facie every essential element of the charged crime and cannot rely upon the defense to supply a missing link. See State v. Pennington, 534 So.2d 393 (Fla. 1988). However, we find the error harmless here where all parties agree that Morris' in-court account was patently unbelievable and there is no reasonable possibility that the jury returned its verdict based upon the erroneous trafficking instruction.
Morris asserts on appeal that the trial court committed error in instructing the jury on felony murder by aggravated child abuse. Under the statutory scheme as reflected in the standard jury instructions,[1] the jury should have been charged on aggravated child abuse in this form: 1) Morris willfully tortured Matthew; or 2) intentionally struck him and in the process thereof intentionally caused him great bodily harm; and 3) Matthew was a child. Instead, it was instructed: 1) Morris willfully tortured Matthew; or 2) intentionally struck him; or 3) intentionally caused him great bodily harm; and 4) Matthew was a child.[2] This instruction erroneously informed the jury that it could find Morris guilty of first-degree murder by aggravated child abuse if it found an underlying offense of simple battery, i.e., intentionally striking Matthew. The guilty state of mind required under the given instruction was an intent to strike Matthew, as opposed to the statutorily required mental state of intent to cause great bodily harm.
Morris failed to object to the instruction at trial and now contends that the error was fundamental. We disagree. The medical examiner testified that his examination of Matthew showed the following evidence of recent abuse: his penis had been tightly encircled with tape and then taped to his abdomen; he had massive bruising on his buttocks; his liver had been lacerated from a blow; he had numerous bruises on his head and a fractured skull; he had neck injuries indicating strangulation. The liver, head, and neck injuries each may have been fatal. Given the evidence of extensive recent abuse, we conclude that there is no reasonable possibility that the jury could have determined that Morris intended only to strike Matthew rather than to hurt him seriously. We hold the error harmless under State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
*30 We also conclude that the trial judge's override of the jury's life recommendation was error. The judge based the override on her finding of a single aggravating factor (the killing was committed in a particularly heinous, atrocious, and cruel manner) in the absence of any mitigating circumstances, and on her belief that the jury was unduly swayed by the closing argument of Morris' lawyer. The standard for determining the appropriateness of an override was set forth in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975):
A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
The totality of the circumstances here as reflected in the record supports the jury recommendation. Morris is borderline retarded with an I.Q. of approximately seventy-five and all parties agree that when he testified in court his mental limitations were obvious. We note that acquaintances affirmed that Morris expressed an abiding love for Matthew and a sincere sense of grief upon his death. Except for the victim's relatives, virtually everyone who was familiar with the defendant and his acts (the jury, the presentence investigation officer, the chief police investigator, teachers, and coaches) recommended against the death penalty.
Based on the foregoing, we affirm the conviction, but vacate the death sentence and remand to the trial court for imposition of a life sentence without possibility of parole for twenty-five years as recommended by the jury.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs with an opinion, in which EHRLICH, C.J., and OVERTON, J., concur.
GRIMES, Justice, concurring.
The instruction on aggravated child abuse was somewhat confusing because the trial judge combined two standard jury instructions (pages 159 and 160) into one. However, I cannot agree that the instruction "informed the jury that it could find Morris guilty of first-degree murder by aggravated child abuse if it found an underlying offense of simple battery, i.e. intentionally striking Matthew." Majority at 29. Contrary to the majority opinion, the instruction did define aggravated battery when it specified that "in committing the battery GEORGE MORRIS intentionally or knowingly caused MATTHEW ROBERTS great bodily harm." Majority at 29 n. 2. See § 784.045, Fla. Stat. (1985).
I also do not believe that it was error to instruct on the felony murder by trafficking. Morris took the stand and said that he had taken the child with him to sell a large quantity of cocaine and that the persons with whom he was dealing beat the child when a dispute arose. This constituted sufficient evidence to justify an instruction on felony murder by trafficking. The fact that it came out in the defendant's case does not violate the rule of State v. Pennington, 534 So.2d 393 (Fla. 1988), which merely holds that when testing the legality of a motion for judgment of acquittal at the end of the state's case, evidence later put on by the defendant cannot be considered. Here, the motion for judgment of acquittal made at the end of the state's case was properly denied because even though proof of premeditation was marginal, the evidence was clearly sufficient to convict of felony murder by child abuse. The motion for judgment of acquittal did not refer to trafficking, so this issue was not even involved. The corpus delicti rule was not implicated because trafficking was the underlying felony rather than the murder of which the defendant was convicted. This is explained in Reyes v. State, 155 So.2d 663 (Fla. 3d DCA 1963).
In any event, I agree with the majority that any errors which may have been committed in the guilt phase of the trial were harmless. I also agree that in view of the *31 evidence, the dictates of Tedder v. State, 322 So.2d 908 (Fla. 1975), require Morris' sentence to be reduced to life imprisonment.
EHRLICH, C.J., and OVERTON, J., concur.
NOTES
[1] See §§ 782.04 (murder), 784.03 (battery), 784.045 (aggravated battery), 827.03 (aggravated child abuse), Fla. Stat. (1985); Fla.Std.Jury Instr. (Crim.) 159, 160 (1981).
[2] The court gave the following instruction on felony murder by aggravated child abuse:

AGGRAVATED CHILD ABUSE
There are two elements in the definition of Aggravated Child Abuse, they are:
1. GEORGE MORRIS willfully tortured and/or maliciously punished MATTHEW ROBERTS.
OR
GEORGE MORRIS committed a battery against MATTHEW ROBERTS by intentionally touching or striking MATTHEW ROBERTS against his will
OR
causing bodily harm to MATTHEW ROBERTS and in committing the battery GEORGE MORRIS intentionally or knowingly caused MATTHEW ROBERTS great bodily harm.
2. MATTHEW ROBERTS was under the age of eighteen years.